Laubie, J.
In this case the Railroad Company seeks to reverse a judgment rendered against it in favor of Blair for $8000, for an injury to his hand.
*581 Counsel for the plaintiff relied very strongly upon what is claimed to have been an erroneous holding on the part of the court below in the admission of evidence of the second amputation of the hand. It seems that at the time of the filing of the petition the plaintiff had,by reason of this accident certain fingers of the hand amputated, and leaving the thumb and index finger of the hand still upon it. But before the trial, under the advice of his physicians, he was compelled to suffer an amputation of the whole [.hand, or of the remaining part of the hand, at the wrist. It was alleged in the petition that three fingers of the hand had to be and were amputated by reason of the injury, and objection was made to testimony as to the second amputation on the ground that it was not alleged in the petition, and that defendant had no notice of it, and was not prepared to meet it. But we think the objection was not welljtaken. The plaintiff might have proved by medical testimony upon the trial, a permanent injury being alleged, that it would be^necessary thereafter to amputate the hand; and if he might do that, certainly he would be entitled to show that it had been in fact amputated since the filing of the petition, without setting it out in a supplemental petition.
It is claimed that the court below erred in instructing the jury that it might take into consideration the ordinary method amongst railroad conductors of getting off trains at registering points, in order to ascertain whether or not, the plaintiff was injured by his own negligence. He was a conductor of a freight train, and by reason of a defective step fell,and the wheels of the car ran over his hand, in the night when the train was in motion, at a station where he was required by the rules of the company to register the time of its arrival and departure from that place. And he testified that it was customary for railroad conductors in performing this duty to get off while the train was in motion; and subsequently, on cross-examination, he testified that he *582 bad seen others get off moving trains for the purpose named. There was no objection taken to this testimony; it was gone into voluntarily apparently by both parties, and no objection of any character was made to it until after the court’s charge, and then the counsel for the defendant below excepted to the court permitting the jury to consider it.
Now while it is true that the court might have properly refused to submit the matter to the jury, yet where the evidence went in without objection, so that it was before the jury, it was not error for the court to permit the jury to consider it. If there had been objection taken to the testimony so as to have raised the point at the threshold, and made it where and when it should have been made, a different proposition would be presented. This court has heretofore declared that such testimony is incompetent, and cannot be introduced for the purpose of excusing negligence on the part of the plaintiff, because if it is a negligent act, no amount of custom can make it otherwise. But as there was no objection whatever made to the testimony, the court might, in its discretion, submit it to the consideration of the jury.
Exception was taken to the charge in regard to the knowledge of the defect by the company. The claimed cause of the injury by the plaintiff was, negligence of the company, in permitting to be upon one of its cars a defective stirrup or step, upon the end of the car, for the use of the employes of the company in getting on and off the train; and it became an important question in the case whether the defendant company had knowledge of this defect or not'. The accident occurred the 4th of September 1894, and consequently after the act of April 2, 1890, 87 O. L. 149, was passed. The second section of this act provides: “It shall be unlawful for any corporation to knowingly and negligently use or operate any car or locomotive that is defective, or any car or locomotive upon which the ma *583 chinery or attachments thereto belonging, are in any way defective. If the employe of any such corporation shall receive any injury by reason of any defect in any car or locomotive, or the machinery or attachments thereto belonging, owned and operated, or being run and operated by such corporation, such corporation shall be deemed to have had knowledge of such defect before and at the time such injury is sustained, and when the fact of such defect shall be made to appear in the trial of any action in the courts of this state, brought by such employe, or his legal representatives, against any railroad corporation for damages,on account of such injuries so received, the same shall be prima facie evidence of negligence on the part of such corporation. ” The words “such corporation”, as used in this section,refer to corporations of the kind and character named in the first section of the act. That is, corporations owning and operating, or operating, or that may hereafter own or operate a railroad in whole or in part in this state. This case having been not only tried, but 'the accident itself having occurred long after the passage of this act, if the facts were of a character necessary to bring it within the statute, it would be subject to its provisions, and would be required to be tried with that in view. The case, however, in fact, was not tried below with reference to that statute, and no claim was made as against the defendant by virtue of its provisions, but the case was presented to and tried by the court, upon the common law ,liability of the defendant. But here counsel for the defendant in' error raised the question of the applicability of this statute to the case, and we are therefore not permitted to overlook it; perhaps we would not in any event, as it is the general law of the state; but at all events we are not permitted to overlook it when it is raised by counsel in the case. Was plaintiff in error a corporation owning and operating, or operating, a railroad partlj within and partly without this state at the time in question ? Of that there is no *584 dispute. The pleadings concede it was, and that it is a corporation organized under the laws of this state as well as of the state of Pennsylvania. The service that Blair was performing at the time was performed in the state of Pennsylvania, and there is where he was injured.
He had been running as conductor on the branch road of the ^company between Pittsburgh and Ohartiers station for six jor eight months prior to this injury, and he was at the time ofjthe injury on a return trip ¡¡from Chartiers station to Pittsburgh; so that he was in the performance of services entirely within the state of ^Pennsylvania. It does not appear, however, that the contract of service was made injthe state of Pennsylvania. It appears fromjthe record that the plaintiff had his residence in this city-when he was originally hired by the company, and still resides here. That he was originally hired to work upon the road as conductor to run between Youngstown and some point in Pennsylvania on the line of the road, and so continued for several years; but six or eight months before the accident he^was assigned by the assistant train master of the company to this branch in Pennsylvania, to take charge as he said of the double (BB) caboose. It does not appear by the record where the assistant train master’s office was, nor where he lived; all that appears is that Blair was hired by the company, and was assigned to do business wherever his superiors chose to put him, and for a few months before this injury was received he had been assigned to duty upon thejoranch road in Pennsylvania where he was injured. And as this corporation was running and operating a road partly within and partly without this state, and as the contract was not shown to have been made in Pennsylvania, the case is governed by the act referred to. If the contract had been made in the state of Pennsylvania, and to be wholly performed there, I think this statute would not apply. In McCann v. Pennsylvania Company 10 C. C. R., 139, there *585 was, as in this case, nothing to -show that the contract was made in the state of Pennsylvania, and therefore this court held that the provisions of the act of April 2, 1890, supra, applied to the case, because in such case those provisions affected the remedy only. It would be different if the contract had been made and was to be performed wholly in Pennsylvania. A contract made in the state of Pennsylvania,for a service to be performed in that state,must be governed by the law of that state; and no other state, by reason of the provisions of the constitution of the United States, can be permitted to violate it or change its legal effect as declared by the laws of the state of Pennsylvania. So that if the contract had been made in the state of Pennsylvania, to be performed there, then the effect of this statute would be to create a cause of action in this state in favor of the employe which he would not have in the state of Pennsylvania; because, as shown by this record, in the state of Pennsylvania, inspectors and conductors are fellow-servants, and if the accident was caused, as claimed both here and in the Me Cann case, by the inspector’s negligence, plaintiff (a conductor) could not recover. And this statute, which applies solely to the remedy,cannot either directly or indirectly make that a cause of action here which was not such in the state of Pennsylvania. But this question does not arise in this case, as it does not appear that this contract was made in the state of Pennsylvania. This consideration also applies to the exception taken to the charge of the court in submitting whether or not the defendant had a corps of competent inspectors whose duty it was to inspect this car.
It is claimed that there was no question in the case of the competency of the inspector, because no such claim was made in the petition, and that the sole allegation in the petition in this regard was that the company had no inspector at all at Jacob’s Run to inspect the car. But these matters all disappear by reason of the force and effect of the statute *586 referred to, which makes a prima facie case, and throws the burden of proof upon the defendant where the accident occurred through a defective piece of machinery or appliance, when the defect is shown to have existed which caused the injury.
The answer, however, among other things, alleged that the defendant company had a competent corps of careful inspectors along its line, whose duty it was to carefully inspect cars substantially at every station upon its line, and wl o regularly and carefully performed that duty; that in the state of Pennsylvania the plaintiff and such inspectors were fellow-servants, for whose negligence no recovery could be had by the plaintiff; that it had discharged its duty to the plaintiff, and if he was injured by reason of the negligence of such inspectors in failing to discover and remedy such defective step, the plaintiff could not recover of defendant therefor. In Railroad Company v. Erick 51 Ohio St., 146 the same answer was made substantially, and the court held that it was no defense under the statute referred to, and that the company could only relieve itself from the imputation of negligence by showing that actual, careful and proper inspection had been made of the car in question, and no such defect found. These matters, therefore, all passed out of this case by virtue of the provisions of the statute in question. Whether there had been an actual inspection of the car was properly left to the jury under further issues in the case.
The next proposition that is made is as to the burden of proof upon the question of contributory negligence. The court charged that the burden of proof of contributory negligence was upon the defendant,unless the testimony on part of the plaintiff raised a presumption of contributory negligence on his part, and if the jury found that it did, then the burden of proof would rest upon the plaintiff to rebut and remove this presumption, and produce a preponderance of *587 evidence that contributory negligence upon his part did not exist. Counsel for the company excepted to this, and insisted that the court should have instructed the jury that the burden of proof on this point was upon the plaintiff, and a majority of this court think that should have been done. Undoubtedly,in this state the'practice is.to submit the question to the jury, and allow them to determine upon which party the burden rests; but this court has heretofore held that the rule was intended to, and does, apply only to cases where the question is doubtful under the evidence. As I have had occasion to say heretofore in regard to this rule, it is an unfortunate one at best. It seems as if it grew out of an attempt to shove responsibility from the shoulders of the court to those of the jury, and at the expense of the parties litigant. I think a party should have the right to have the court say upon whom the burden of proof rests, whether upon the plaintiff or upon the defendant, and to take exception to it if it is against him. This rule places the court in the undignified position that when counsel asks the court to say upon whom the burden rests, the 'court has to respond. “Oh, I don’t know, you will have to ask the jury.” And this in regard to a legal proposition, and not a question of fact.
If the facts are such that it is doubtful whether or not the plaintiffs testimony raises such a presumption, this rule applies, and the question must go to the jury, the court not being permitted' then to determine it; but if the presumption is not doubtful, if the facts are such that there can be no reasonable presumption but that of negligence, then the rule does not apply in our estimation, and it is then a question of law only to be determined by the court.
Now, how is it in this case? Blair was conductor of this • train with the authority to stop it by signal to the engineer, in the performance of his duties whenever he saw fit, and at, *588 the point where he got off the train at West Newton, to go. to the office to register, he was authorized by the rules of the company to stop the train, and was not required to get off while the train was in motion. He was not required to expose himself to injury in that form, but was authorized to bring the train to a standstill in order to allow him to get off in safety, to go to the office. - and register. Instead of doing this, and taking what would have been a reasonably safe course for him, in the middle of the night, in the dark, with a lantern upon his left arm, and his left hand partially useless, he undertook to get off while the train was going as he says himself, four or five miles an hour. He did not even use his lantern to light the way. Instead of holding it down so he could see what was below him, whether everything was in order below him, and where he was going to step to, he had it upon his arm.
He claims he was injured because the stirrup or step of the car was loose at one side; the nut was off the bolt, and when he put his weight upon the step, it gave way and threw him down, and'the train ran over a part of his hand. Beyond any question, he could not have suffered such an injury if he had performed his duty in the way the company had authorized him to do it — -to stop his train, bring it to a standstill, before he attempted to get off. Now, I do not say that this was negligence per se, that it was such negligence as would absolutely bar a recovery, but I do say that the only reasonable presumption that could be drawn from this state of facts is that of negligence; that it would be intolerable to permit a jury to say that to attempt to get off a moving train in the dark in that manner and under those circumstances, did not raise a presumption of negligence.
Concede that the case should go to the jury to determine whether it was such negligence as would bar a recovery, but that the facts as told by himself raised a presumption of negligence against the plaintiff, I think is beyond dispute.
*589 Thejopinion expressed in Grant v. Railway Co., 10 C. C. R.,362 as to the safety of such an act, had .reference entirely to the evidence the court was then called upon to review as it had been presented by the plaintiff, and by way ofjcomparison to getting off in front of a locomotive; and is not to be understood as holding that such -an act is in fact a safe one or free from negligence. It is perhaps generally held that it is not negligence per se to get off a moving train, while it is movingjslowly; but many courts hold that it is negligence per se, and bars recovery. This case itself illustrates the danger of getting off a moving train, in that the plaintiff in do.ing so was injured and run over; and in such a case, that a jury may be permitted to hold that the burden of proof of contributory negligence is on the defendant, because the evidence does not even raise a presumption of negligence against the plaintiff would be unjust.
In his passage from the top of the car to the ground, Blair had many things to contend against. Accidents of this character will occur from various causes. One man is injured because the hand hold is defective or broken, or gone. Another is injured because the stirrup is defective. Another,because when he steps down on to the ground, he steps on a pebble or in a small hole, and his foot turns and he is thrown under the train. There are a hundred different ways wherein in attempting to get off a moving train, andjespecially in the night, an injury may occur to the party, and where ordinary care and caution for his own safety would require that he should, if he had the power to do it, stop the train, bring it to a standstill, so he might alighUin safety; and beyond all question the burden of proof should rest upon him who voluntarily and unnecessarily runs such a risk; and giving the jury the'right to find otherwise is in violation of the rule as heretofore laid down by. this court, and which this court intends to follow until the Supreme Oourt holds that it is wrong. In the opinion of a majority of this *590 court, the court below erred in submitting this proposition to the jury, instead of instructing them that the burden of proof as to contributory negligence rested upon the plaintiff. There was no necessity of the court telling the jury why, that it was because the plaintiff’s evidence raised a presumption of negligence on his part, so as to prejudice his case by the expression of such opinion. All the court had to do was to instruct them that the burden of disproving contributory negligence rested upon the plaintiff; and for not doing so this case will have to be reversed.
James P. Wilson and S. D. Jackson,for plaintiff in error.
W. S. Anderson and R. B. Murray, for defendant in error.
There is still another question, that is as to the amount of the verdict, or damages. The jury awarded to the plaintiff the. sum of $8,000. It seems that his hand had been injured before, and that for a year he had but partial use of that hand, The bones of one if not two of the middle fingers had been broken just above the knuckle joint,and he could not shut the hand tight, and the other fingers were withered somewhat. For the loss of this imperfect left hand, the jury awarded him the sum of $8.000,and we all think that this was excessive, and could have been given by the jury only through prejudice or passion, But this matter has been arranged and a remittitur agreed upon, so that the question as to the charge may be the sole question presented to the Supreme Court for revision, and the case is reversed, therefore, solely on that one ground.
Burrows, J., dissents from the first proposition of paragraph 2, of the syllabus,